RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; FRANCISCO A. AGUIRRE, Intervener.

No. 205. Argued February 1, 1949.—Decided July 29, 1949.

Vicente Géigel Polanco, Attorney General, (*Luis Negrón Fernández,* former *Attorney General,* on the brief) and *Elmer Toro Lucchetti, Assistant Attorney General* for petitioner. *F. M. Susoni, Jr.* for intervener, complainant in the main action.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The Treasurer notified the intervener of certain income tax deficiencies consisting of: (*a*) failure to include as income for the years 1941 and 1942 undistributed profits in

F. Fresno & Cía., of which the intervener was a member, and (b) failure to declare as income $21,000 deposited in his current account in The National City Bank of New York, Arecibo Branch, during the year 1936 and $3,400 deposited in the same bank in a savings account in the year 1937.

The intervener appeared before the Tax Court, and the latter sustained his complaint.

■ The first question has been adversely decided to the intervener in *Buscaglia, Treas.* v. *Tax Court, Miguel Ballester Ripoll, Intervener*, 69 P.R.R. 700.

■ As to the second, we must first determine whether the taxpayer overcame the presumption of correctness of the Treasurer's assessment.

The taxpayer, upon explaining the origin of the sums in question, testified that they represented his saving from his business dealings since the year 1922; that previously he had this money in the bank but that during the depression in 1932, he withdrew part of it keeping it in his safe and only left in the bank enough money to keep his business going; that during the years 1936 and 1937 he contracted some obligations and then he deposited again the money in the bank.

We thus see that the only evidence introduced by the intervener to overcome the presumption in favor of the Treasurer's determination, was his own testimony in the terms already expressed. Notwithstanding this, the Tax Court, when referring to the income of 1936, said as follows:

*"As to the extraordinary deposits of $21,000—The testimony of a general character, given by appellant on the witness stand to the effect that in 1932 there was panic in the banks, does not prove that the amount withdrawn by him from his bank that year amounted precisely to $21,000, or to any other fixed sum; nor does it prove that the amount of his so-called savings was equivalent to, or in excess of $21,000. Neither can it be affirmed, based on that testimony, that it did not reach said sum.*

"We are not aware, for lack of evidence, of petitioner's income for the years prior to 1936; nor of his expenses. Assuming that the petitioner could save $23,000 from 1922 until 1935, said fact, *per se,* is not enough to prove that the $21,000 deposited during 1936 were not derived from his other activities during that year. But *in a much lesser degree* it does constitute evidence that they were obtained from the other activities referred to. *In other words, even if the petitioner did not prove with the utmost precision the source, in detail, of the $21,000, we consider that, in the absence of any allegation as to fraud, error, or bad faith, Aguirre did overcome the presumption of correctness of the Treasurer's determination, and that he shifted the 'onus probandi' to the Treasurer.* His testimony to the effect that his extraordinary deposits of $8,000 plus $8,000, $3,000 and $2,000, made in 1936, were derived from the aforementioned previous savings, was not contradicted or refuted; and besides, that he had the necessity of making those deposits in order to cover drafts and the obligations he contracted that year with the firms whose products he sold in the country.

"It is true that, according to his income return for the year 1936, plaintiff's Exhibit B, introduced in evidence without objection, Aguirre's expenses amounted only to $2,480.84. It seems that in order to cover expenses of approximately $2,500 for the payment of drafts and obligations, it was not necessary to deposit in the bank the sum of $21,000. But it is also true that we are reviewing *all* the facts of said return, and that we are dealing now with presumptive income, and not expenses.

"*On the other hand, there is no doubt that the fact of keeping approximately $21,000 in a safe, without investing it, for a period of little less (1936–1932) than 4 years, is something which is not common with any intelligent and cautious merchant as, judging from his own testimony, petitioner seems to be.* Such inactivity must have represented to him a loss of approximately ($21,000 × 0.08 = $1,680. $1,680 × 4 years = $6,720, let us say $6,000) $6,000. But it is also true that he might have done such a thing, even if it were an error, a whim or the result of groundless fear." (Italics ours).

And as to those of 1937 he said:

"4.—*As to the deposit of $3,400 in petitioner's savings account.*—According to the notice of appeal, the $3,000 were deposited in a savings account in the bank, whereas according to Aguirre's testimony, the said $3,400 were deposited subject to the same conditions, and in the same manner, as the deposits during 1936.

"It should likewise be noticed that, according to the allegations of the complaint, the $3,400 referred to 'proceeded from Mr. Aguirre's savings obtained during the years previous to 1936 and 1937'; and that, according to his testimony before us—see the statement of facts in connection with the extraordinary deposits of $21,000, made in 1936, *supra*—the total amount of his savings from 1922 until 1935 amounted to approximately $23,000. If from those savings, *made prior to 1936,* he deposited $21,000 in 1936, it is obvious that in 1937 he would have left only $2,000 for deposit in the bank and not $3,400. The remaining ($3,400 — $2,000) $1,400 could easily have been saved from 1935 until 1936–37 by petitioner, who was unmarried and who, since 1922, as revealed by the testimony adduced and not contradicted, apparently had the habit of saving annually some ($23,000 in 13 years)—$1,770.

"We conclude that petitioner did overcome the presumption of correctness of the Treasurer's assessment; and that this point of the complaint should be granted."

We cannot agree with the conclusion reached by the Tax Court. To overcome the presumption of correctness of the Treasurer's assessment, something more than mere generalities is required. We have already decided that this presumption can only be overcome by clear and convincing evidence. The evidence in the instant case falls short of being so. *Corporación Azucarera v. Tax Court*, 69 P.R.R. 189.

The decision of the Tax Court should be reversed and the case remanded for further proceedings consistent with this opinion.

Mr. Justice Negrón Fernández did not participate herein.